** PART II **
B. REASONABLE EXPECTATIONS.
THE DETERMINATION OF AN ENTITY'S MAXIMUM CUMULATIVE CASH FLOW DEFICIT IS BASED UPON THE ISSUER'S REASONABLE EXPECTATIONS CONCERNING CERTAIN FUTURE EVENTS. THESE FUTURE EVENTS INCLUDE INTER ALIA THE ANTICIPATED LEVEL OF REVENUES, THE EXPECTED DATE THE REVENUES WILL BE RECEIVED AND THE ANTICIPATED AMOUNT AND TIMING OF EXPENDITURES. THE REGULATIONS DO NOT SPECIFICALLY ADDRESS WHAT MAKES AN EXPECTATION "REASONABLE." NEVERTHELESS, IT IS CLEAR THAT TO BE "REASONABLE" AN EXPECTATION MUST HAVE SOME DEMONSTRABLE BASIS IN REALITY. THIS WOULD APPEAR TO REQUIRE THAT A PROJECTION HAVE SOME SUPPORTING BASIS IN HISTORICAL FACT. CONVERSELY, IT WOULD APPEAR THAT A PROJECTION WHICH WAS NOT CONSISTENT WITH HISTORICAL DATA WOULD NEED TO BE JUSTIFIED BY A CREDIBLE SHOWING OF CHANGED CIRCUMSTANCES.
TO SOME EXTENT THE REGULATIONS ALLOW AN ISSUER TO ESTABLISH ITS REASONABLE EXPECTATIONS THROUGH AN "ARBITRAGE CERTIFICATE." AN ARBITRAGE CERTIFICATE MUST BE EXECUTED BY AN OFFICER RESPONSIBLE FOR ISSUING THE OBLIGATION AND MUST SET FORTH A BRIEF SUMMARY OF THE FACTS AND ESTIMATES ON WHICH THE ISSUER'S EXPECTATIONS ARE BASED. THE CERTIFICATE MUST ALSO STATE THAT TO THE BEST OF THE KNOWLEDGE AND BELIEVE OF THE CERTIFYING OFFICER THE ISSUER'S EXPECTATIONS ARE REASONABLE. SUBSEQUENT EVENTS WILL NOT AFFECT A PROPER CERTIFICATION. HOWEVER, IF A CERTIFICATION CONTAINS A MATERIAL MISREPRESENTATION, THE COMMISSIONER OF THE INTERNAL REVENUE SERVICE MAY DISQUALIFY THE ISSUER. TREAS.REG. S 1. 10313(A)
C. ARTIFICE OR DEVICE; OVERISSUANCE.
THE REGULATIONS CONTAIN AN ANTI-ABUSE PROVISION WHICH PROHIBITS AN ISSUER FROM EMPLOYING AN "ARTIFICE" OR "DEVICE" IN CONNECTION WITH THE ISSUANCE OF GOVERNMENTAL OBLIGATIONS. AN ARTIFICE OR DEVICE IS A TRANSACTION OR SERIES OF TRANSACTIONS THAT ATTEMPTS TO CIRCUMVENT THE ARBITRAGE RESTRICTIONS SO AS TO INCREASE THE BURDEN ON THE MARKET FOR TAX-EXEMPT OBLIGATIONS AND ENABLE THE ISSUER TO EXPLOIT THE DIFFERENCE BETWEEN TAX-EXEMPT AND TAXABLE INTEREST RATES TO GAIN A MATERIAL FINANCIAL ADVANTAGE. AN OBLIGATION ISSUED THROUGH SUCH A TRANSACTION WILL BE CONSIDERED TO BE AN ARBITRAGE BOND. TREAS.REG. 1.103-13(J).
TO ILLUSTRATE THE KINDS OF TRANSACTIONS THAT THE INTERNAL REVENUE SERVICE CONSIDERS TO BE ABUSIVE, THE REGULATIONS SET FORTH A NUMBER OF EXAMPLES. THESE EXAMPLES SPECIFICALLY INCLUDE SELLING OBLIGATIONS THAT WOULD NOT OTHERWISE BE SOLD AND SELLING MORE OBLIGATIONS THAN WOULD OTHERWISE BE NECESSARY. THUS, THE REGULATIONS SPECIFICALLY FORBID THE OVERISSUANCE OF GOVERNMENTAL OBLIGATIONS. TREAS.REG. 1.103-13(J).
THE REBATE REQUIREMENT
IN ADDITION TO THE SIZING REQUIREMENTS OUTLINED ABOVE, THE CODE GENERALLY REQUIRES ISSUERS, INCLUDING SCHOOL DISTRICTS AND COUNTIES, TO REBATE ANY ARBITRAGE EARNINGS TO THE UNITED STATES. 26 U.S.C.A. 148(F). THE AMOUNT OF REBATE PAYABLE IS THE AMOUNT EARNED FROM INVESTING THE PROCEEDS OF THE ISSUE, MINUS THE AMOUNT WHICH WOULD HAVE BEEN EARNED IF SUCH PROCEEDS HAD BEEN INVESTED AT A RATE EQUAL TO THE YIELD ON THE ISSUE. IRC 148(F). WHERE A GOVERNMENTAL ISSUER FAILS TO COMPLY WITH THE REBATE REQUIREMENT, ITS OBLIGATIONS MAY BE TREATED AS ARBITRAGE BONDS. IRC 148(F).
EXEMPTIONS FROM THE REBATE REQUIREMENT
THE CODE PROVIDES A NUMBER OF EXEMPTIONS FROM THE REBATE REQUIREMENT. AN ISSUER WILL NOT HAVE TO REBATE ARBITRAGE EARNINGS ON AN ISSUE WHICH FALLS WITHIN ONE OF THESE EXEMPTIONS; AN ISSUER WILL BE REQUIRED TO PAY REBATE ON ANY ISSUE WHICH DOES NOT COME WITHIN AN EXEMPTION. IN THE PRESENT CONTEXT, TWO EXEMPTIONS ARE MOST PERTINENT: THE SIX MONTH SPEND-OUT EXEMPTION AND THE SMALL ISSUER EXEMPTION.
1. THE SIX MONTH SPEND-OUT EXEMPTION.
AN OBLIGATION WILL BE EXEMPT FROM REBATE IF THE GOVERNMENTAL ENTITY WHICH ISSUED THE CERTIFICATE EXPENDS THE PROCEEDS ON LEGITIMATE GOVERNMENTAL EXPENSES WITHIN SIX MONTHS OF THE DATE OF ISSUANCE. IRC26 U.S.C.A. 148(F)(4)(B). THE CODE CREATES A SPECIAL "SAFE HARBOR" RULE FOR DETERMINING WHETHER THE PROCEEDS OF TAX ANTICIPATION NOTES, SUCH AS CERTIFICATES OF INDEBTEDNESS, ARE EXPENDED WITHIN SIX MONTHS. UNDER THIS RULE, A CERTIFICATE OF INDEBTEDNESS WILL NOT BE SUBJECT TO REBATE IF AT SOME POINT WITHIN SIX MONTHS AFTER THE ISSUANCE OF THE CERTIFICATE, THE "CUMULATIVE CASH FLOW DEFICIT" OF THE SCHOOL DISTRICT OR COUNTY EXCEEDS 90% OF THE PROCEEDS OF THE ISSUE. IRC 148(F)(4)(B).
THE "CUMULATIVE CASH FLOW DEFICIT" OF A SCHOOL DISTRICT OR COUNTY IS THE AMOUNT BY WHICH THE ACTUAL EXPENSES THAT ORDINARILY WOULD BE PAID OUT OF TAX OR OTHER REVENUES, EXCEED THE AMOUNT OF FUNDS AVAILABLE — OTHER THAN THE PROCEEDS OF THE ISSUE, BUT INCLUDING THE FUNDS EARNED FROM INVESTING THE PROCEEDS — DURING THE PERIOD FOR PAYMENT OF THE EXPENSES. IRC 148(F)(4)(B).
BECAUSE THE SIX MONTH SPEND-OUT EXEMPTION IS BASED ON THE ISSUER'S ACTUAL CASH FLOW DEFICIT, IT ESSENTIALLY CREATES A "LOOKBACK" TEST. THAT IS, TO DETERMINE WHETHER A DISTRICT OR COUNTY IS IN COMPLIANCE, THE ENTITY MUST LOOK BACK OVER ITS ACTUAL CUMULATIVE CASH FLOW DEFICIT TO SEE IF IT TOTALS 90% OR MORE OF THE AMOUNT OF THE PROCEEDS OF THE CERTIFICATE. IF WITHIN SIX MONTHS OF THE DATE OF THE ISSUE THE CUMULATIVE DEFICIT IS 90% OR MORE OF THE PROCEEDS, THEN THE SCHOOL DISTRICT OR COUNTY WILL NOT BE REQUIRED TO PAY REBATE; OTHERWISE, THE ISSUE WILL BE SUBJECT TO THE USUAL REBATE REQUIREMENT.
2. THE SMALL ISSUER EXEMPTION.
THE CODE ALSO CREATES AN EXEMPTION FOR SMALL ISSUERS. UNDER THIS PROVISION, A CERTIFICATE ISSUED BY A SCHOOL DISTRICT OR COUNTY WHICH WILL NOT ISSUE MORE THAN $5,000, 000 IN TAX-EXEMPT OBLIGATIONS DURING THE RELEVANT CALENDAR YEAR IS NOT SUBJECT TO REBATE IF AT LEAST 95% OF THE PROCEEDS OF THE CERTIFICATE ARE TO BE USED TO PAY THE EXPENSES OF THE SCHOOL DISTRICT OR COUNTY. IRC S 148(F)(4)(D).
UNLIKE THE SPEND-OUT EXEMPTION, THE SMALL ISSUER EXEMPTION CREATES A PROSPECTIVE OR "LOOK-FORWARD" TEST. THIS TEST REQUIRES THAT A SCHOOL DISTRICT OR COUNTY INTEND, AT THE TIME OF ISSUE, TO SPEND AT LEAST 95% OF THE PROCEEDS OF THE CERTIFICATE ON ITS LEGITIMATE GOVERNMENTAL EXPENSES. IF THIS INTENTION DOES NOT EXIST OR CANNOT BE JUSTIFIED BY REASONABLE PROJECTIONS, THEN THE SCHOOL DISTRICT OR COUNTY MUST PAY REBATE.
INCIDENTLY, COUNTIES WHICH ARE BENEFICIARIES OF PUBLIC TRUSTS THAT ISSUE TAX-EXEMPT BONDS SHOULD CONSIDER THE AGGREGATION RULES SET FORTH IN 148(F)(4)(D) OF THE CODE IN DETERMINING WHETHER THEY MEET THE EXEMPTION'S $5,000, 000 CEILING.
POTENTIAL CONSEQUENCES OF NON-COMPLIANCE
THERE ARE A NUMBER OF POTENTIAL CONSEQUENCES WHICH MAY ARISE IN THE EVENT A SCHOOL DISTRICT OR COUNTY FAILS TO COMPLY WITH THE FEDERAL AND STATE RESTRICTIONS PERTAINING TO THE ISSUANCE OF TAX EXEMPT CERTIFICATES OF INDEBTEDNESS. THE POTENTIAL CONSEQUENCES FALL GENERALLY INTO THREE CATEGORIES.
FIRST ARE POTENTIAL FEDERAL CONSEQUENCES. CERTIFICATES THAT FAIL TO COMPLY MAY BE DEEMED TO BE ARBITRAGE BONDS WITHIN 103 OF THE CODE AND DENIED TAX-EXEMPT STATUS. A SCHOOL DISTRICT OR COUNTY MIGHT ALSO BE REQUIRED TO PAY REBATE TO THE UNITED STATES ON PAST ARBITRAGE EARNINGS. FURTHER, THERE IS THE POTENTIAL THAT A SCHOOL DISTRICT OR COUNTY WOULD BE DISQUALIFIED FROM EXECUTING ARBITRAGE CERTIFICATES AND WOULD, THEREFORE, BE UNABLE TO ISSUE ADDITIONAL TAX-EXEMPT BONDS, INCLUDING TAX-EXEMPT GENERAL OBLIGATION BONDS. TREAS.REG. 103-13(A).
POTENTIAL STATE LAW CONSEQUENCES ALSO EXIST. SECTION 60 O.S. 177. 3 OF TITLE 60 MAKES PARTICIPATING IN A CASH MANAGEMENT PROGRAM WITHOUT OBTAINING COMMISSION APPROVAL A CRIMINAL OFFENSE. SECTION 60 O.S. 177.3 ALSO MAKES THE SUBMISSION OF FALSE OR MISLEADING DOCUMENTS TO THE COMMISSION A CRIMINAL OFFENSE. A VIOLATION IS A MISDEMEANOR PUNISHABLE BY A FINE OF NOT LESS THAN ONE THOUSAND DOLLARS AND/OR IMPRISONMENT FOR UP TO ONE YEAR IN THE COUNTY JAIL. ANY OFFICIAL CONVICTED OF THIS OFFENSE MAY ALSO BE REMOVED FROM OFFICE AND ANY PROFESSIONAL LICENSES ISSUED TO THE OFFICIAL WILL BE REVOKED.
FINALLY, THERE ARE OTHER COLLATERAL CONSEQUENCES TO CONSIDER IN THE EVENT A SCHOOL DISTRICT OR COUNTY FAILS TO COMPLY WITH THE APPLICABLE ARBITRAGE REGULATIONS AND A CERTIFICATE ISSUED BY THE SCHOOL DISTRICT OR COUNTY IS, THEREFORE, DEEMED TO BE AN ARBITRAGE BOND. THESE INCLUDE THE POTENTIAL ADVERSE EFFECT ON THE CREDIT RATING OF THE ENTITY AND ALSO THE INCREASED COST OR POTENTIAL INABILITY OF THE ENTITY TO OBTAIN CREDIT ENHANCEMENT IN THE FUTURE. MOREOVER, THERE IS A SUBSTANTIAL LIKELIHOOD OF ADDITIONAL LIABILITY ON THE PART OF THE SCHOOL DISTRICT OR COUNTY, AND PERHAPS THE INDIVIDUAL OFFICERS, AS A RESULT OF ANY BREACH OF THE COVENANTS CONTAINED IN ANY CONTRACT OR ARBITRAGE CERTIFICATE EXECUTED IN CONNECTION WITH THE ISSUANCE OF THE CERTIFICATE OF INDEBTEDNESS.
THE ROLE OF THE COMMISSION
THE COMMISSION IS DIRECTED BY STATE LAW TO OVERSEE THE PARTICIPATION OF SCHOOL DISTRICTS AND COUNTIES IN SHORT-TERM CASH MANAGEMENT PROGRAMS. IN CARRYING OUT THIS MANDATE, THE COMMISSION HAS USED ITS BEST EFFORTS TO PREPARE FORMS WHICH WILL ENABLE SCHOOL DISTRICTS AND COUNTIES TO COMPLY WITH ALL APPLICABLE REGULATIONS. OBSERVING THE GUIDELINES IMPOSED BY STATE LAW AND THE REQUIREMENTS ESTABLISHED BY THE COMMISSION DOES NOT NECESSARILY EQUATE WITH COMPLIANCE WITH THE FEDERAL REGULATIONS, HOWEVER.
THE COMMISSION CANNOT ASSURE SCHOOL DISTRICTS AND COUNTIES THAT THEY ARE IN COMPLIANCE WITH FEDERAL TAX LAW. RATHER, THE ULTIMATE RESPONSIBILITY FOR COMPLIANCE WITH FEDERAL ARBITRAGE RESTRICTIONS FALLS UPON THE LOCAL SCHOOL DISTRICT AND COUNTY OFFICIALS WHO DIRECT THAT A DISTRICT OR COUNTY PARTICIPATE IN A PROGRAM, AND WHO PLACE THEIR SIGNATURES ON THE AUTHORIZING DOCUMENTS.
(K. W. JOHNSTON)